# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-00204-RM-NYW

DAVID ARONSTEIN and LESLEY STROLL,

    Plaintiffs,

v.

THOMPSON CREEK METALS COMPANY INC.,
KEVIN LOUGHREY, PAMELA SAXTON, PAMELA SOLLY,
JAMES L. FREER, JAMES P. GEYER, TIMOTHY J. HADDON,
CAROL T. BANDUCCI, THOMAS J. ONEIL,
DENIS C. ARSENAULT, AND WENDY CASSITY

    Defendants.

---

## STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION

---

Plaintiffs and Defendants submit this e-discovery protocol in accordance with the Court's orders dated April 3, 2015 (Dkt. 47) and April 28, 2015 (Dkt. 52).

*[Defendants would include the following (Plaintiffs object to this language):* This Stipulation and ~~Proposed~~ Order ~~will~~ does not independently require specific actions by either party to identify, gather and prepare specific ESI for production to the opposing party. ~~Such obligations will not be required unless the Court authorizes discovery to proceed in this case, and until the Court rules on Defendants' objection, under proportionality principles, to the cost of producing ESI based on consideration of: a) the potential relevance of ESI (including email production) to the legal and factual issues Plaintiffs have raised in their complaint, in comparison to b) the estimated cost of retrieving the information. Defendants request that the Court require Plaintiffs to share in the~~

~~cost of Defendants' production of ESI to give them an incentive to avoid placing unnecessary burden and expense on Defendants.]~~

~~[Plaintiffs would include the following additional language: By the Court's ORDER (Doc 47), "Parties will be REQUIRED to submit an e-discovery protocol at the time of the Status Conference". This Stipulation and Proposed Order Regarding Discovery of Electronically Stored Information stands alone as a Document REQUIRED to be produced by the Court. It exists in and of itself and need not speak at all to Defendants' request for a Stay of Discovery, which is pending before the Court, and due to be additionally briefed at Oral Argument on May 11, 2015. Plaintiffs do not believe that the arguments advanced by Defendants in the preceding paragraph, at all belong within this document.]~~

This Stipulation and Proposed Order Regarding Discovery of Electronically Stored Information shall be the governing document by which the parties and the Court manage the production of electronically stored information ("ESI") in this action. All parties shall be under an obligation to take reasonable steps to comply with this Stipulation and Proposed Order. This Stipulation and Proposed Order does not constitute an agreement on what cost-sharing from Plaintiffs, if any, will be appropriate for Defendants' production of ESI. The parties will seek guidance from the Court in the future on that issue if they cannot reach agreement between themselves.

The parties and the Court recognize that this Stipulation and Proposed Order is based on facts and circumstances as they are currently known to each party, that the discovery process is iterative, and that additions and modifications to this Stipulation and Proposed Order may become necessary as more information becomes known to the parties. Nothing in this Stipulation

and Proposed Order will be interpreted to require disclosure of documents or information protected from disclosure by the attorney-client privilege, work-product doctrine or any other applicable privilege or immunity. All parties preserve such privileges and there is no intent through either this Stipulation and Proposed Order or the production of documents or information hereunder to waive or weaken such privileges.

**I.     Definitions.**

A.  "Meta-Data" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.  Meta-Data is a subset of ESI.

B.  "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified.  Native Files are a subset of ESI.

C.  "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the parties or order of the Court, a Static Image should be provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF). If load files were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files should be produced together with Static Images.

## II. ESI Retention and Identification Protocol.

### 1. Custodians:

The parties will collect potentially responsive ESI from the following custodians:

a. <u>For Plaintiffs</u>: David Aronstein and Lesley Stroll.

b. <u>For Defendants</u>: Each of the defendants who has entered an appearance in this case: Defendants Thompson Creek Metals Company Inc. ("TCM"), Kevin Loughrey, Pamela Saxton, Pamela Solly, James L. Freer, Timothy J. Haddon, and Wendy Cassity, and the following two additional people: Scott Shellhaas (former President and COO) and Mark Wilson (current Chief Commercial Officer). ~~Defendants object to the cost and burden of including as additional custodians anyone who was involved with accounting or project management for the Mt. Milligan Mine project – that goes beyond the allegations in Plaintiffs' Amended Complaint.~~

~~*[Plaintiffs would include the following (Defendants object to this language):*~~ ~~Other ESI custodians for Defendants will include: any other persons that may subsequently be identified, as having been materially involved in the creation, dissemination and vetting of TCM's Investor Presentations, or accounting and project management, as specifically related to the development of the Mt Milligan Mine, whose construction and financing is at the core of Plaintiffs Complaint.]~~

### 2. **Description of Information Systems**:

a. **For Plaintiffs**:

Plaintiffs maintain control over three servers that were used in the day to day trading operations of Tri-State Modeling LLC, the entity through which Plaintiffs purchased and sold

their shares in Thompson Creek Metals. A hard copy of the source code for Plaintiff Aronstein's valuation model has been created. Additionally, an electronic copy still exists.

Plaintiffs' email accounts were all maintained by third party providers and accessible through the Internet. Those accounts remain open. Those accounts were key word searched, and all emails that were possibly relevant to the complaint have been converted to hard copy. The original electronic versions of those emails remain.

Plaintiffs have maintained copies of TCM's Investor Presentations that were in their possession at the time Plaintiffs sent their demand letter to TCM.

Plaintiffs have requested, from Lime Brokerage, and have received, documents reflecting all the trading activity in TCM during the period.

b.     **For Defendants:** (information as of 2012 when Plaintiffs' demand letter was received and the Company took actions to preserve potentially relevant documents):

Thompson Creek had approximately 50 people working in its Colorado headquarters during 2011 and 2012. Those employees used the Microsoft suite of computer applications (Outlook, Word, Excel, PowerPoint). Most employees keep their older emails. Therefore, older information generally is stored on currently accessible computer files.

Thompson Creek sent out a document hold memo to its employees on May 30, 2012 (after receiving Plaintiffs' May 17, 2012 demand letter), with an updated document hold memo sent on February 25, 2014 (after Plaintiffs filed this lawsuit). Those memos advised employees to retain, and not discard, categories of documents potentially relating to Plaintiffs' allegations and claims.

i. <u>Word, Excel, PowerPoint documents</u>: The Company encourages employees to keep computer files such as Word, Excel, or PowerPoint documents on a central document server. Some employees who travel frequently store some of their documents on the local hard drive of their Company-issued computer so the current version of the file is easily accessible when traveling.

ii. <u>Emails</u>:

As of 2012, Thompson Creek used a Microsoft "Exchange" email server hosted by a third-party vendor, and Windows Outlook software to store emails sent to, and received by, company employees. There was no automatic delete function in place. Each employee managed retention of his or her own emails.

To preserve emails in existence as of the time Thompson Creek received Plaintiffs' demand letter, the Company's information technology department created a hard-drive file with a copy of Company emails for certain employees with responsibility for the matters alleged in the complaint in existence as of May 2012. If emails are produced in this case, they would be produced either from individual employees' Outlook files, or, if necessary, from the copy of email files stored on that hard-drive, or any other repository, from which responsive emails can be gathered, that is 'Reasonably Accessible.'

iii. <u>Disaster recovery back-up system</u>:

Thompson Creek's information technology group performs a daily full back-up of non-email files on shared computer drives (it has a de-duplicating function so that it only picks up new or revised documents each day). This back-up is a disk-to-disk process and the backup is

stored on a server device. This is a disaster recovery back-up only; the stored data are not readable but they can be restored at significant expense if necessary.

The Company does not regard its disaster recovery "back-up" file as reasonably accessible for purposes of Fed. R. Civ. P. 26(b)(2)(B), and objects to the large cost and burden of producing files from that system. That system is maintained for the purpose of disaster recovery and is not intended to function as a server from which documents can be routinely retrieved.

Nevertheless, to preserve a copy of all the non-email documents and data that were being held as of the date Plaintiffs filed this lawsuit in Connecticut in February 2014, Thompson Creek's information technology department restored the documents that were saved in this system as February 2013 (one year before), and copied those restored files into a separate secure folder on a company server.

If non-email ESI is produced in this case, it will be drawn from shared computer servers or individual employees' computer folders, or any other repository, from which responsive emails can be gathered, that is 'Reasonably Accessible.'

Thompson Creek's Canadian office also keeps disaster recovery computer back-ups that reach back ten years. Those files could be accessed, at significant expense, if necessary. Thompson Creek does not regard those back-up files maintained by its Canadian office as reasonably accessible for purposes of Fed. R. Civ. P. 26(b)(2)(B), and objects to the large cost and burden of producing files from that system. That system is maintained for the purpose of disaster recovery and is not intended to function as a server from which documents can be routinely retrieved.

iv. <u>Computer files from departing employees</u>: During 2011 and 2012, when employees left Thompson Creek, the Company made a copy onto a network drive of all the local files on a that person's hard drive to preserve a copy of those files, and then gave the computer to the employee as a departing gift. The Company also has created a "pst" archive file of a departing employee's emails and saved that archived file.

Kevin Loughrey retired from the company in October 2013, before this lawsuit was filed. Because Mr. Loughrey used an Apple computer (with a different operating system than Windows computers), his hard-drive files were not copied to a company server when he retired. Therefore, when Plaintiffs filed this lawsuit in February 2014, the company directed Mr. Loughrey to retain and preserve any potentially relevant files that were stored on the hard drive of the Thompson Creek computer that he took with him when he retired.

~~[Plaintiffs would include the following (Defendants are checking on this question):~~ ~~Plaintiffs request that Defendants provide information about how Defendant Loughrey moved data to and from his Apple computer during his course of employment, and furthermore, what steps if any were taken at the time of Plaintiffs' demand letter, to preserve any relevant information contained on that computer.]~~

**4.** <u>**Keyword Search Terms**</u>**:**

Plaintiffs are not seeking to begin the process concerning Keyword Search Terms described in this section at this time, and may delay that process until after other initial discovery work is completed.

a. The parties shall exchange lists of keyword search terms they propose to use to search for responsive documents. The parties agree to limit such terms to those likely to yield

information relevant to the claims and defenses in this litigation, based on the allegations in Plaintiffs' Amended Complaint and Defendants' Motion to Dismiss (Dkt. 22).

      b.      The parties agree to meet and confer (by telephone) to discuss the use of agreed-upon keyword search terms.

      c.      Within 14 days of meeting and conferring to discuss the use of agreed-upon key word searches, as referenced in paragraph 4.b. above, the parties shall exchange any proposed edits and/or additions to the proposed lists of search terms. The parties shall endeavor to come to an agreement regarding proposed keyword search terms. If the parties are unable to do so, they may present any issues for resolution by Magistrate Judge Wang in accordance with Local Rule 7.1.

      **5.**      **Document Requests seeking ESI:**

The parties shall meet and confer (by telephone) when they are ready to discuss with respect to particular discovery requests, whether, or to what extent, the obligation to conduct a reasonable search for ESI documents in response to propounded discovery requests shall be deemed to be satisfied by producing responsive, non-privileged documents that are captured by using the agreed-upon keyword search terms, applied to agreed-upon custodians and agreed-upon computer systems and/or servers, augmented by manual review as the parties may deem appropriate.

Nothing in this Order shall be construed to waive the parties' right to object to the scope of particular discovery requests or to review their own documents for responsiveness or privilege. The parties also further agree to undertake reasonable efforts to produce identifiable

categories of responsive, non-privileged documents not captured by the search terms, subject to the meet and confer described at the beginning of this paragraph.

**III.     ESI Production Protocol.**

The parties will produce any ESI to each other in digital form according to the specifications in Exhibit A below.

**IV.     Privilege Logs.**

The parties agree that isolation, review, redaction and logging of privileged communications can be costly and time-consuming. To limit the cost of a privilege review and make document production more efficient, the parties agree to use the protocols described below with respect to handling responsive documents that may include privileged information.

The parties need not identify, on any privilege or work product log in response to document requests, privileged documents constituting:

    a.     communications between any party, and counsel for that party (other than between Thompson Creek employees, and in house counsel for Thompson Creek), that (a) were for the purposes of litigating this case, or were in anticipation of litigation regarding the allegations made by the Plaintiffs in this litigation; (b) post-date the establishment of an attorney-client relationship between counsel and the party; and (c) were not disclosed to anyone who, at the time of the disclosure, was a third party to the attorney-client relationship;

    b.     communications solely between counsel for Plaintiffs, or communications solely between counsel for Defendants, that post-date the establishment of an attorney-client relationship between each such attorney and his or her client(s));

10

      c.     communications between attorneys or their agents and litigation experts or consultants; and

      d.     documents created by then-current counsel (or by any employee or agent of then-current counsel) for the purpose of litigating this case, or in anticipation of litigation relating to Plaintiffs' allegations in this case, and not disclosed to anybody who, at the time of the disclosure, was not a client of the firm creating the document at issue, an attorney for aligned parties in this case or those attorneys' employees, or a consultant or expert described in sub-paragraph (c) above.

Neither party will treat the failure to log such documents as a waiver of any privilege or protection.

Privilege or protection claims as to communications between a party and counsel may initially be logged by category, provided that the log includes sufficient information to evaluate or challenge any claim of privilege or protection. If any party disagrees that the log provides sufficient information to evaluate or challenge the claim of privilege or protection, that party may request further information, and the party claiming the privilege or protection must provide the information required by Rule 26(b)(5) or other applicable law.

The parties request that the Court approve as an order of the Court under Fed. R. Evid. 502(d) & (e) the following agreement concerning inadvertent production of privileged documents:

1.     Under Federal Rule of Evidence 502(d), the disclosure of a communication or information covered by the attorney-client privilege or work-product protection does not operate as a waiver of any such privilege or protection as to the disclosed communication or information,

11

nor does it operate as a waiver with respect to disclosed or undisclosed communications or information concerning the same or similar subject matter.

    2.    The parties agree to be governed by Federal Rule of Civil Procedure 26(b)(5)(B) with respect to claims of privilege and Federal Rule of Evidence 502(b) with respect to inadvertent production of privileged materials. The parties will abide by the following procedure in connection with any inadvertent production of privileged materials:

    A.    If a producing party has a good faith belief that a privileged document has been inadvertently produced, it shall notify the receiving party of the producing party's claim of privilege within sixty (60) days after the producing party actually discovers that such inadvertent production was made.

    B.    Upon receipt of any notice claiming privilege with respect to a produced document, all other parties (regardless of whether they agree with the producing party's claim of privilege) shall promptly:

    1). Use reasonable efforts to destroy or sequester all copies of the inadvertently produced documents or material in such parties' possession, custody, or control, and notify the disclosing party that they have done so; and

    2). Notify the producing party that they have taken reasonable steps to retrieve and destroy or sequester the inadvertently produced documents or material from other persons, if any, to whom such documents or material have been provided, consistent with Rule 26(b)(5)(B).

    C.    To the extent a receiving party disputes the producing party's claim of privilege, the receiving party shall notify the producing party of its position within ten

(10) business days of receiving the producing party's notice (the "Dispute Notification"). Within ten (10) business days of receiving the Dispute Notification, the parties shall meet and confer in an effort to resolve their disagreement. If the parties are unable to resolve their disagreement, the parties may submit the issue to the Court for a determination, submitting any document(s) in dispute under seal in compliance with Rule 26(b)(5)(B), and any relevant agreements or Court orders. *See* Fed. R. Evid. 502(d)-(e).

*[Plaintiffs would include the following (Defendants object to this language)]*:

## V. Reasonably Accessible.

No party should object to the discovery of ESI pursuant to Fed.R.Civ.P. 26(b)(2)(B) on the basis that it is not reasonably accessible because of undue burden or cost unless the objection has been stated with particularity, and not in conclusory or boilerplate language. ~~Wherever the term "reasonably accessible" is used in this Protocol, the party asserting that ESI is not reasonably accessible should be prepared to specify facts that support its contention.~~

## VI. Limitations.

Nothing in this Stipulation and Proposed Order shall prohibit a party from seeking modification of any of its terms either by stipulation or by application to the Court. Should any party subsequently determine that it cannot in good faith proceed as required herein or without undue burden and cost, the parties will meet and confer to attempt to resolve any dispute before seeking intervention by the Court.

This Stipulation and Proposed Order relates to the general protocol of identifying and producing ESI, and is not otherwise intended to alter the parties' respective rights and obligations under the Federal Rules of Civil Procedure. The parties may stipulate or any party may bring a motion to modify or clarify the application of this Stipulation and Proposed Order to a particular document or set of documents, particular set of ESI, or otherwise.

DATED: October 15, 2015

BY THE COURT:

s/ Nina Y. Wang
United States Magistrate Judge

APPROVED:

Dated: May 4, 2015.

Respectfully submitted,

*s/ Gregory J. Kerwin*
Gregory J. Kerwin
Allison K. Kostecka
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202
Telephone:  (303) 298-5700
FAX:  (303) 313-2829
Email: gkerwin@gibsondunn.com
Email: akostecka@gibsondunn.com

*Attorneys for Defendants Thompson Creek Metals Company Inc., Kevin Loughrey, Pamela Saxton, Pamela Solly, James L. Freer, Timothy J. Haddon, and Wendy Cassity.*

*s/ Michael M. Strage*
Michael M. Strage
LAW OFFICE OF MICHAEL STRAGE

730 Fifth Avenue, Suite 1901
New York, New York 10019
Telephone: (646) 642-0701
Email: michaelstrageesq@gmail.com

*Attorneys for Plaintiffs David Aronstein and Lesley Stroll.*

15

EXHIBIT A
Format for digital production of ESI

The parties are discussing whether to produce documents to each other as scanned pdf files (except for spreadsheets, and any Documents that have previously been transmitted to unaffiliated third parties, that would be produced as Native Files), rather than go to the expense of producing images and load files in the manner described below. They may be able to reach agreement to forego the procedures for digital document production as described in the paragraphs below.

A.  TIFF Image Files: Except for all SpreadSheets, or, any Documents that have previously been transmitted to unaffiliated third parties, the parties agree that all Documents will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution, except as provided in section B. Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (e.g., portrait to portrait and landscape to landscape). For all SpreadSheets, or, any Documents that have previously been transmitted to unaffiliated third parties, parties agree that they will be provided as Native Files.

B.  Text Files: Each Document produced under this order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page. Each text file shall be named using the Bates number of the first page of the corresponding production item.

  i.  OCR: The text for each hard copy document shall be generated by applying optical character recognition (OCR) technology to the scanned image of the document. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

  ii.  ESI: The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above. For contacts and calendars collected and/or processed, user modifiable fields should be extracted and produced as text.

  iii.  Redacted Text: The text file corresponding to a redacted document may be generated by applying OCR to the redacted TIFF file under the provision above.

  iv.  Foreign Language Text: The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Document- including all TIFF conversion and OCR processes, and the extraction of text

from native files - preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

C. <u>Bates Numbering</u>:

i. Each TIFF image produced under this order must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

ii. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify any such gap within 14 days of each production or 14 days after noticing the gap, whichever is later. The producing party need not provide a placeholder (e.g., gap sheet, dummy image) within the production.

iii. The producing party will brand all TIFF images with its corresponding Bates number, using a consistent font type and size. Parties will make reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

D. <u>Color:</u> If a receiving party finds the black and white version of a Document insufficient, the receiving party may request that the producing party provide a color image. The producing party will not unreasonably deny a request to provide a color image after the requesting party demonstrates good cause for requesting a color image. If a producing party converts a document to color image in response to a request from a receiving party, the producing party shall do so in JPEG, TIFF or such other format as agreed with the receiving party.

E. <u>Confidentiality Designations</u>: If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to the Document. The confidentiality designation should also be reflected in the "Confidentiality" field.

F. <u>Load Files</u>: All productions will be provided with Concordance image and data load files. The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

[~~*Plaintiffs would include the following provision (Defendants object to this provision and believe both Plaintiffs and Defendants can retain vendors to prepare ESI images and load files based on this Protocol)*~~]:

2

3

~~Plaintiffs do not have access to any kind of software to enable the production of Concordance image or data load files. Plaintiffs are willing to forward electronic copies of relevant emails, their valuation model, and or trading records as have been provided by Lime Brokerage]~~

G.  <u>Fields</u>:

   i.  Documents shall be produced with the following fields regardless of whether the fields may be populated automatically from the native file or created using an automated process: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) SourceParty, (g) NativeFileLink (for ESI only), (h) AttachRange, (i) Confidentiality, G) RecordType, and (k) Redacted.

   ii.  ESI shall be processed to reflect the date and time standardized for the UTC/GMT time zone.