IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Case No. 15-cv-00204-RM-NYW

DAVID ARONSTEIN, *et al.*,

    Plaintiffs,

v.

THOMPSON CREEK METALS COMPANY INC., *et al.*,

    Defendants.

___

# ORDER
___

Pending before the Court are plaintiffs', David Aronstein and Lesley Stroll (collectively, "plaintiffs"), motions for discovery sanctions ("the motion for sanctions") and leave to file a third amended complaint ("the motion to amend").[1] (ECF Nos. 191, 230.) Defendants Thompson Creek Metals Company Inc. ("Thompson Creek"), Kevin Loughrey ("Loughrey"), Pamela Saxton ("Saxton"), and Pamela Solly ("Solly", and, collectively, "defendants") have responded to both motions (ECF Nos. 198, 233), and plaintiffs have filed replies (ECF Nos. 203, 237).

For the reasons discussed *infra*, the motion for sanctions and motion to amend are DENIED.

**1.**     **Plaintiffs' Allegations**

The allegations underlying the two instant motions are the same, thus, the Court will summarize from both pleadings. The basis for the two motions is plaintiffs' belief that defendants

___

[1] Also pending before the Court are the parties' opposing motions for summary judgment (ECF Nos. 207, 211), which will be addressed in a separate opinion.

have failed to preserve certain electronically stored information, in violation of Fed.R.Civ.P. 37(e) ("Rule 37(e)") and state tort law. The motion for sanctions is premised upon the alleged violation of Rule 37, while the motion to amend seeks to add claims premised upon Connecticut tort law. Plaintiffs' allegations run as follows.

The current operative complaint, the Second Amended Complaint ("the SAC"), alleges that, as of February 25, 2011, defendants knew that the cost of the "Mt. Milligan Project" was materially higher than the amount ($915 million) disclosed to plaintiffs. (ECF No. 191 at 2.) A former employee of Thompson Creek, Terry Owen ("Owen"), at a board meeting in July 2010, stated that he expected the cost of the Mt. Milligan Project to increase $250 million. (*Id*. at 4.) Owen was the Director of Projects at Thompson Creek, and the technical head of bringing the Mt. Milligan Project into production. (*Id*. at 3.)

The agenda for a November 3, 2010 board meeting stated that Owen would give a review of the Mt. Milligan Project and that a "presentation" would be provided. (*Id*. at 4.) The "presentation" was not provided in discovery, and defendants' attorney has represented that Owen could not recall if a physical document was created for the November meeting. Under examination during a deposition, though, Owen stated "in no uncertain terms" that there had been a presentation. (*Id*.) Owen also testified that, at the time of the November 2010 board meeting, his expectation for a $250 million cost increase at the Mt. Milligan Project remained unchanged. (*Id*. at 5.) The materials for a board meeting on February 23, 2011, showed that the expected cost of the Mt. Milligan Project would "probably fall in the range of $1.25 Billion and $1.425 Billion." (*Id*. at 6.) On a conference call two days later, defendant Loughrey stated that Thompson Creek still did not know whether or not the cost of the Mt. Milligan Project would increase. (*Id*.)

Plaintiffs have also alleged that defendants' attorney has represented that virtually no documents, created or modified during the period October 1, 2010 to May 15, 2011, existed on Owen's computer drive. (*Id.* at 2; ECF No. 230 at 2.) The Senior Manager for IT at Thompson Creek, Lance Moss ("Moss"), stated that, when Owen left Thompson Creek, a copy of all local files stored on his laptop computer were transferred to a folder on the company's shared drive, the folder on the shared drive had not been altered or deleted, and it contained approximately 36 gigabytes of non-email files. (ECF No. 230 at 2-3.)

**2.  Discussion**

Plaintiffs' motions rely upon that theory that, because of Owen's former position at Thompson Creek, there is "no doubt" that his computer and shared drive "at one point contained a vast amount of the detailed engineering and design documents, including all the foundational documents that would have been the basis for his Board of Directors presentations of July 2010, November 2010 and February 2011." (ECF No. 191 at 3; *see also* ECF No. 230 at 3.) According to plaintiffs, these documents are "missing," and, if found, "would certainly shed light on what the company knew and when they knew it with regards to the allegations of the SAC." (ECF No. 230 at 4; *see also* ECF No. 191 at 5.) Plaintiffs ask this Court to find, as a result of defendants failing to preserve the missing documents, that defendants knew, as of February 23, 2011, the expected cost of the Mt. Milligan Project was between $1.25 and $1.425 billion. (ECF No. 191 at 8.)

The Court rejects plaintiffs' request because their assertions are premised upon unfounded speculation and flawed assumptions. First among those flaws is plaintiffs' failure to explain how the Court is meant to reach the requested finding based upon certain allegedly missing documents. There is no evidence whatsoever that any of the missing documents, assuming for present purposes

3

that they are missing, contained any information resembling the requested factual finding. Plaintiff does not even allege that the missing documents contain this information. Instead, plaintiff simply wants this Court to assume, based upon one document from the February 23, 2011 board meeting (*see* ECF No. 191 at 6), that an unknown number of other documents existed, showing that the expected cost of the Mt. Milligan Project was expected to increase to at least $1.25 billion, and were at some point destroyed. The Court is not willing to make either unfounded assumption.

Second, although plaintiffs are very specific as to precisely what they wish this Court to find for purposes of sanctioning defendants, plaintiffs are notably vague as to what the missing documents contained. The motion to amend unhelpfully states that the documents would "certainly shed additional light on what the company knew". (ECF No. 230 at 4.) How this leads to an assumption that defendants knew the cost of the Mt. Milligan Project would increase to at least $1.25 billion is unclear and unexplained. The motion for sanctions is more specific, at least with respect to one document, stating that the November 2010 board presentation would cover in some detail why Owen thought that the expected cost increase for the Mt. Milligan Project remained unchanged as of November 3, 2010. (ECF No. 191 at 5.) If that is the case, plaintiffs should have simply asked Owen that question (i.e., asked him about the reasons for why his cost increase expectation remained unchanged) at his deposition. In any event, other than the November 2010 presentation, there is no explanation of what any other missing document contained, even in a vague sense.

As such, the Court does not find that defendants failed to preserve electronically stored information when the Court cannot even get a grasp on precisely what information is alleged to have gone missing.

Third, plaintiffs have not shown that defendants failed to preserve any documents. Put another way, there is no evidence that any documents are missing. To support their assertion that documents are missing, plaintiffs rely on Owen's purported deposition testimony that he did create a presentation for the November 2010 board meeting. (ECF No. 191 at 4-5.) As an initial matter, this testimony relates only to the purported November 2010 board presentation. As such, it does not support the suggestion that documents other than that presentation are missing. With respect to the presentation itself, plaintiff relies upon Owen's deposition testimony that he "probably" would have had "slides" for the November 2010 board meeting. (ECF No. 203 at 5.) Contrary to plaintiffs' belief, this is not evidence that Owen created a presentation for the November 2010 board meeting. Nor does it explain, even if there was a "presentation," what Owen presented; the testimony refers to "slides," and provides the Court with no estimation as to what was on those slides.

In the motion to amend, plaintiffs take a more general approach with the documents that were allegedly not preserved, arguing that "virtually all of the electronic documents" created or modified between October 1, 2010 and May 15, 2011 that once existed on Owen's laptop or the company shared drive were destroyed. (ECF No. 230 at 3.) Plaintiffs assert this is so because 36 gigabytes of information exist on the folder assigned to Owen, but defendants have been unable to produce any documents from the October 2010 to May 2011 date range. (*Id*. at 4; *see also* ECF No. 191 at 2-3.) As an initial matter, contrary to plaintiffs' assertion, defendants' attorney did not represent that the documents were destroyed; he stated that the documents did not exist. (*See* ECF No. 230 at 2-3; ECF No. 203-1 at 1.) Although plaintiffs apparently do not believe so, there is a difference.

More important, Moss's affidavit, which plaintiffs appear to cite in support of their allegations (*see* ECF No. 230 at 2-4), refutes any suggestion that documents were destroyed. The

5

Moss affidavit clearly states, as plaintiffs reiterate in the motion to amend, that, when Owen stopped working for Thompson Creek, he returned his laptop and a copy of all local files stored thereon were transferred to a folder assigned to Owen on the company's shared drive. (*See* ECF No. 198-1 at ¶ 9.) Only after a copy of all of Owen's files were preserved on the shared drive, was the laptop wiped clean. (*Id*.) Moss then further states that Thompson Creek has maintained, and not altered or deleted, the folder assigned to Owen on the company's shared drive. (*Id*. at ¶ 10.) Plaintiffs do not offer any evidence to dispute these assertions.

The undisputed assertions in Moss' affidavit close the book as to whether defendants failed to preserve any of Owen's electronic documents. Put simply, any documents that existed on Owen's laptop at the time he left Thompson Creek were transferred to another folder, and that folder has been maintained (and not altered) since that time. Thus, if a November 2010 board presentation existed, as plaintiffs' assert Owen's deposition testimony suggests, then that presentation should have been on Owen's laptop when the file transfer occurred. There is certainly no suggestion that Owen deleted the presentation prior to his departure. Rather, plaintiffs rely on Owen's deposition testimony that (i) the document may have existed, and (ii) all documents that he created during his employment with Thompson Creek were available on his laptop when he left the company. (ECF No. 203 at 5-6.) If the latter is true (i.e., all of the documents Owen created were on his laptop when he left), then the former cannot be true (i.e., the November 2010 board presentation cannot have existed) because all documents that did exist on Owen's laptop were transferred to another folder and there is no November 2010 board presentation in that folder. (*See* ECF No. 198-1 at ¶¶ 9-10.)

As a result, the Court finds that defendants have not failed to preserve electronically stored information in violation of Rule 37(e). For the same reasons, the Court finds that any amendment

to the SAC to add tort claims for spoliation of evidence would be futile because plaintiffs have failed to plausibly allege that any evidence was spoiled in this case.[2] *See Rizzuto v. Davidson Ladders, Inc.*, 905 A.2d 1165, 1179 (Conn. 2006) (explaining that the tort of intentional spoliation of evidence requires showing, *inter alia*, destruction of evidence with intent to deprive the plaintiff of his cause of action).[3]

**3.     Conclusion**

For the reasons discussed herein, the Court:

(1)     DENIES the motion for sanctions (ECF No. 191); and

(2)     DENIES the motion to amend (ECF No. 230).

**SO ORDERED.**

DATED this 27th day of April, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[2] The Court will assume *arguendo* that plaintiffs can bring the spoliation claims they propose, but notes defendants' potentially valid arguments that Colorado law applies to any claims for spoliation of evidence, and Colorado law does not recognize such claims, *see Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1164 (10th Cir. 2011). (*See* ECF No. 233 at 16-18.)

[3] Although irrelevant at this point, the Court notes that, in Connecticut, a plaintiff must also show an inability to establish a prima facie case without the spoliated evidence. *Rizzuto*, 905 A.2d at 1179. Here, plaintiff's pre-existing claims have proceeded well beyond the prima facie stage of proceedings.